**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| **ROSA MARGARITA ARSUAGA-GARRIDO** | * | |
| | * | |
| **Plaintiff,** | * | **CIVIL NO.** |
| | * | |
| **v.** | * | **RE: EMPLOYMENT RIGHTS** |
| | * | |
| **KIRSTJEN NIELSEN** | * | **PLAINTIFF DEMANDS** |
| **Secretary of the United States** | * | **TRIAL BY JURY** |
| **Department of Homeland Security,** | * | |
| | * | |
| **Defendant** | * | |

**********************************************

# COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** the Plaintiff, by and through the undersigned counsel, and respectfully alleges, states and requests, as follows:

## I. NATURE OF ACTION

1. The plaintiff **Rosa Margarita Arsuaga-Garrido** ("**ARSUAGA**" or "Plaintiff") brings this action against her former employer, the Federal Emergency Management Administration (FEMA) attached to the **United States Department of Homeland Security** ("**DHS**" or "Defendant"), pursuant to the Rehabilitation Act and Title VII of the Civil Rights Act of 1964, seeking compensatory damages as result of discriminatory treatment where Plaintiff was not provided feasible reasonable accommodations for her disabilities, was subjected to disability-based discrimination, and was victim of retaliation for having engaged in protected activities which culminated in her termination.

## II.  <u>JURISDICTION AND VENUE</u>

2.1    This Honorable Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §1331, inasmuch as it arises under 29 C.F.R. §1614.408 (Rehabilitation Act) and 42 U.S.C. § 2000e-5 (Title VII).

2.2    This Honorable Court has personal jurisdiction over this civil action because the employment practices and other acts alleged to be unlawful were committed and the damages were suffered by Plaintiff within the jurisdiction of the United States District Court, District of Puerto Rico.

2.3    Venue lies under 28 U.S.C. § 1391(b) & (c), and 31 U.S.C. §3732(a) because Defendant transacts business within this district and the facts forming the basis of this Complaint occurred within the District of Puerto Rico.

## III.  <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

3.1    On February 14, 2018, **ARSUAGA** filed timely charges of employment discrimination with the Equal Rights Office of the **DHS** (hereinafter referred to as "ERO").

3.2    Subsequently, Plaintiff received the right-to-sue notice, dated November 23, 2018, from the ERO.

## IV.  <u>DEMAND FOR TRIAL BY JURY</u>

4.    Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff demands a trial by jury in the instant case, pursuant to Fed. R. Civ. P. 38b.

### V.  PARTIES TO THE ACTION

5.1    **ARSUAGA** is an adult female individual and a citizen of the United States of America who resides in the Commonwealth of Puerto Rico.

5.2    **ARSUAGA** suffers from the following physical and mental disabilities: recurrent cancer, general anxiety disorder and mayor depressive disorder. Plaintiff's physical and mental disabilities are of the type protected by the Rehabilitation Act and substantially impaired her major life's activity of working, thinking, concentrating, sleeping and relating to others. Plaintiff was qualified to perform the essential functions of her employment position, with reasonable accommodations, so long as she worked in an environment free from hostility, abuse and intimidation.

5.3    At all times relevant herein, **ARSUAGA** was an employee of **DHS** within the meaning of the applicable statute who fulfilled duties for Defendant as a FEMA Reservist, in the position of Certified Human Resources Specialist, on an intermittent basis, from San Juan, Puerto Rico, and on call to travel upon deployment to FEMA declared disasters.

5.4    At all times relevant herein, **ARSUAGA** was duly qualified to carry out the duties assigned to her as Reservist in the position of Certified Human Resources Specialist. Plaintiff received good performance evaluations, consistent salary increases and a FEMA certificate of appreciation. She performed her functions with a high degree of excellence, diligence and interest in her work and she expected to be treated in a professional and respectfully manner at the

workplace by her supervisors, management and co-workers without the fear of being the object of discrimination, or of being subjected to hostile and abusive conduct by reason of disability or to reprisals for having complained of discrimination and harassment.

5.5    **DHS** is an "employer," within the meaning of the applicable statutes, that engages in Emergency Management functions for the Government of the United States, it's possessions and territories and which, at all times relevant herein, had more than 500 employees.

## VI.  FACTUAL ALLEGATIONS

6.1    On April 1, 2011, the Social Security Administration found **ARSUAGA** disabled to work. On January 2, 2015, she decided to participate in the Social Security Administration program called Trial Work.

6.2    On July 10, 2016, **ARSUAGA** began to work for **DHS** after accepting a position with FEMA as an intermittent Reservist in the position of Human Resources Specialist at the Human Resources Operations Division for **DHS.**

6.3    At all times relevant herein, **Louis Perez**, FEMA Human Resources Manager in **DHS'** Virginia Human Resources Operations Division Office, was Plaintiff's supervisor of record.

6.4    As a FEMA Reservist, **ARSUAGA** was deployed from Puerto Rico to declared FEMA disasters in various areas of the United States and Puerto Rico.

6.5    Upon commencing her employment, **ARSUAGA** requested and obtained from FEMA a reasonable accommodation for an emotional support dog --

a ten-pound Maltese breed dog named Hannah -- to be in the workplace with her, as per medical recommendation due to her emotional condition. This reasonable accommodation consisted in allowing Plaintiff to bring Hannah to work in a dog carrier and to place and keep it in a designated space besides her chair and under the table in her work area.

6.6 Since **ARSUAGA's** arrival at Anniston, Alabama, for FEMA training, on July 11, 2016, and up to January 18, 2018, she was subjected to continuous hostile-work-environment harassment perpetrated by FEMA's managerial and supervisory employees, co-workers and security guards by reason of the reasonable accommodation for her disability.

6.7 On July 26, 2016, FEMA sent **ARSUAGA** to the U.S. Government facility at Mt. Weather, in Virginia, for training in Human Resources.

6.8 Upon arrival at Mt. Weather, **ARSUAGA** was harassed and threatened by security guards to take away her emotional support small dog.

6.9 From July 25 to July 29, 2016, **Luis Perez** and **Steven Beaux**, FEMA Training Specialist, subjected **ARSUAGA** to harassment, emotional abuse and discrimination by requesting her to leave her emotional support dog at the hotel and threatening to take the dog away from her and to refer the matter to FEMA attorneys if she did not do so. **Perez** also refused to acknowledge Plaintiff's reasonable accommodation and, instead, claimed that her accommodation had an expiration date and that he would not extend the same beyond said date. **Perez**

5

undermined Plaintiff's work performance with other managers, supervisors, and Human Resources personnel in an attempt to force her to quit her job.

6.10   On December 27, 2016, FEMA employee **Carlos Fonseca** yelled at **ARSUAGA,** abusively confronting her because she had her emotional support dog at the FEMA office; and requested Plaintiff to leave said office because he was "allergic" to dogs. Shortly thereafter, **Perez** threatened **ARSUAGA** with informing **Fonseca** about medical conditions.

6.11   On October 12, 2016, **ARSUAGA** was deployed by FEMA to Atlanta, Georgia. At the time, **Sandra Chafin** was the Human Resources Manager on site.

6.12   **Sandra Chafin** continuously harassed and emotionally abused **ARSUAGA** at the Atlanta facilities. **Chafin** went so far as to remove Plaintiff from her work area and to instruct her to return to Puerto Rico due to alleged complaints from co-workers regarding her emotional support dog.

6.13   On January 3, 2017, FEMA's EEO Specialist **Henri Foudiya** refused to accept **ARSUAGA's** discrimination complaints.

6.14   From January 8 to January 18, 2017, **Katherine Clark**, FEMA Payroll Manager, subjected **ARSUAGA** to disability-based emotional abuse and harassment by insulting her, tampering with her written work, and removing work from her computer at night to create the appearance that her work performance was deficient.

6.15   On February 17, 2017, **ARSUAGA** was deployed by FEMA to Sevierville, Tennessee, for a period of 45 days.

6.16   Upon **ARSUAGA**'s arrival at the Human Resources Office on February 21, 2017, Manager **Reina Zayas** indicated to Plaintiff that she was going to replace her as an HR Specialist and that she would be training her on the daily functions. That same day, Plaintiff was introduced by **Zayas** to **Lai Sun Yee,** the Federal Coordinating Officer at the location.

6.17   That same day (February 21), while **ARSUAGA** was at the Human Resources Office, FEMA employee **Jeffery Coffman** (Security Reservist) came into the office requesting some information. With her dog by her side on a leash, Plaintiff walked toward him to attend his request. While she was standing in front of him, the dog, apparently scared, barked at him. Under no circumstances did the dog attack or bit him.

6.18   On February 22, 2017, while **ARSUAGA** was at the Human Resources Office with **Reina Zayas, Jeffery Coffman** came in and indicated that Hannah had bitten him in the leg the day before. Shortly thereafter, **Lai Sun Yee** summoned Plaintiff to her office and advised her, in an accusative manner, that her dog had bitten **Coffman** in his leg, that he had an "injury" and that she was responsible for the incident. **ARSUAGA** informed **Yee** that she was present when the purported incident occurred and that **Coffman's** allegations were false. Plaintiff also asked her for medical evidence to the effect that **Coffman** had been "injured" by her dog. **Yee** refused to respond. Plaintiff then requested her copy of the incident report, but none was provided to her.

7

6.19   On February 27, 2017, **Reina Zayas** ordered **ARSUAGA** to return to Puerto Rico the following day, which she did.

6.20   On June 1, 2017, **ARSUAGA** was deployed, per FEMA's request, to Oklahoma City, Oklahoma, for thirty (30) days. She arrived there on June 4, 2017.

6.21   On June 13, 2017, **Michael Vasquez**, Finance Manager, called **ARSUAGA** to a meeting outside the office building to discuss her approved reasonable accommodation and her emotional support dog. During the meeting, **Vasquez** yelled at Plaintiff and, in a threatening manner, ordered her to keep the emotional support dog in the hotel and not to bring the dog to the office anymore.

6.22   On September 20, 2017, by **Veronica Zimmerman**, Human Resources Specialist, harassed **ARSUAGA** due to her emotional support dog, threatening to remove her from the working area and place her in the basement area alone with the dog.

6.23   Additional incidents of harassment by reason of **ARSUAGA's** disability occurred from October 2 to 4, 2017, while she was deployed, as per FEMA request, to Anniston, Alabama, Tallahassee and Orlando, Florida.

6.24   October 2, 2017, while **ARSUAGA** was working in her cubicle in the Human Resources Area, **Domenic Piso**, Chief Officer at the Joint Federal Office ("JFO"), walked by and, viciously and intentionally, scared and provoked her dog by pounding on the floor with his feet. The dog just barked at him. **Piso**, in a threatening, abusive and disrespectful manner, proceeded to ask her questions about the dog and insulted her.  **Piso** then left the area and immediately returned

with **James Parker**, EEO Specialist, who also confronted Plaintiff with questions about her dog.

6.25   On October 4, 2017, **Tommy Wall**, Human Resources Lead, informed **ARSUAGA** that, "there are complaints about your dog" and that the dog had to immediately leave. **Wall** also told her that, "You are tied to the dog" and "offered" to transfer her to FEMA Puerto Rico. **Wall** then instructed Plaintiff to leave the JFO that same day and to stay at the hotel, indicating that **Patricia McCurry**, Human Resources Manager, would send her tasks by email. **ARSUAGA** was thereby isolated in her hotel and removed from the mainstream of information from the Human Resources Office because of her emotional support dog, with no tasks assigned to her and receiving only pieces of data.

6.26   On October 12, 2017, **ARSUAGA** received an email from **Tommy Wall** asking her to return to Puerto Rico the next day and that the possibility of her transfer to the FEMA Puerto Rico Office "did not happen." **Wall** also stated therein that her emotional support dog could not return to the Orlando Office.

6.27   From December 4, 2017, to January 18, 2018, **ARSUAGA** continued to be victim of specific instances of disability-based harassment and emotional abuse by her supervisor **Luis Perez**, **Carol Smith,** Human Resources Manager, and **Treva Horton Baker**, Human Resources Manager. They isolated her from other co-workers by placing her in a working table alone in an area distant from the worksite, subjected her to unnecessary and excessive supervision, constantly

9

criticized her working and lunch hours, stripped her from job responsibilities because of her emotional support dog, and excluded her from meetings.

6.28 On January 9, 2018, by **Grable Byron**, Manager, submitted an email complaining about **ARSUAGA's** emotional support dog and requesting removal because the dog allegedly had "bacteria."

6.29 On January 11, 2018, by **Victor Concepcion Gonzalez**, ERO PR Hire, **Maria Rodriguez**, ERO PR Hire, in complicity with **Louis Perez**, refused to grant an extension of the reasonable accommodation requested by **ARSUAGA** regarding her emotional support dog.

6.30 On December 10, 2018, in the aftermath of hurricane Maria, **ARSUAGA** accepted deployment in San Juan, Puerto Rico, to work in the FEMA JFO.

6.31 Immediately upon deployment, **ARSUAGA** was subjected to excessive and close supervision by **Carol Smith** and **Treva Horton**, Site Human Resources Managers, with inquiries about phone calls, working hours, lunch periods, conversations with other co-workers, break periods, etc., with the evident intent to adversely affect the quality of her work.

6.32 On December 16, 2017, **ARSUAGA** visited FEMA facilities in Caguas, P.R., and was subjected to vicious discriminatory remarks because of the presence of her emotional support dog by FEMA employee **Carlos Fonseca,** who yelled at Plaintiff on her face, humiliating her.

6.33   On January 11, 2018, while **ARSUAGA** was working at FEMA's JFO in Guaynabo, Puerto Rico, she was called to a meeting, in presence of co-workers, by **Victor Concepcion Gonzalez** and **Maria Rodriguez**, both EEO Specialists locally hired by FEMA. Both indicated to Plaintiff not to return to the workplace with her emotional support dog because the reasonable accommodation had expired. Immediately afterwards, Plaintiff received an email from **Louis Perez** with the same information.

6.34   That same January 11, **ARSUAGA** requested, in writing, her supervisor **Louis Perez** an extension of her reasonable accommodation; but **Perez** denied such request alleging falsely that her emotional support dog had bitten an employee.

6.35   The frequency, continuity and intensity of the pattern of hostile-work-environment harassment, comprised of the discriminatory and retaliatory acts to which **ARSUAGA** was subjected by her supervisor, co-workers and others, described hereinabove, was abusive, intimidating, offensive and created a hostile work environment for Plaintiff that unreasonably interfered with her work performance. Such unlawful behavior placed undue pressure upon Plaintiff, causing her to suffer severe anxiety and depression and to feel humiliated, persecuted and insecure about her employment.  Although Plaintiff performed the duties assigned to her by her supervisors, she did so by making an extraordinary effort so that the quality of her job would not be affected.

6.36 As result of the cumulative effect of the prolonged and continuous discriminatory and retaliatory practices, as well as the rigorous terms and conditions of employment, to which the **DHS** subjected **ARSUAGA** at the workplace, described hereinabove, Plaintiff's pre-existing mental and physical disabilities were gradually exacerbated to the point where she suffered a severe nervous breakdown on January 12, 2018, which forced her to seek urgent medical care. Plaintiff's doctor placed her on medical leave of absence from January 12 to January 29, 2018.

6.37 On January 18, 2018, while on sick leave, **ARSUAGA** received an email from her supervisor **Louis Perez** terminating her employment with FEMA, effective that same day.

6.38 At all times relevant herein, **DHS** was fully aware of the pattern of hostile-work-environment harassment and retaliation to which **ARSUAGA** was subjected, by reason of her disabilities and her engagement in protected activities, by its managerial and supervisory employees and others. On multiple occasions, from June 2016 and until January 2018, Plaintiff verbally and in writing complained to **DHS** and FEMA-ERO about such unlawful employment practices. However, **DHS** failed to take any corrective action. Instead, Defendant knowingly allowed such misconduct to occur and continue unabated for a period of two years, thereby ratifying and adopting the discriminatory and retaliatory acts, and ultimately, fired her from her job.

6.39 The **DHS** discriminated against **ARSUAGA** on the basis of her disabilities, and interfered or otherwise failed to provide her with feasible reasonable accommodations requested by her. Instead, in retaliation for having engaged in protected activities and complained of discrimination to her supervisors and the ERO, Defendant subjected Plaintiff to a hostile work environment that deliberately aggravated her disabilities, which constituted an unreasonable employment accommodation.

## VII. <u>CAUSES OF ACTION</u>

**First Cause of Action:**

7.1 Plaintiff repeats and reasserts by reference each and every allegation contained the preceding paragraphs and incorporates the same herein as though fully set forth.

7.2 The **DHS** discriminated against **ARSUAGA** with respect to her terms, conditions and privileges of employment and constructively discharged her from her job by reason of her disabilities, in violation of the Rehabilitation Act.

7.3 As a direct result of the aforementioned unlawful employment practices, **ARSUAGA** suffered, is suffering and will continue to suffer severe mental, psychological, moral and emotional pain, anguish and distress; she has sustained a loss of happiness, a loss of the capacity to enjoy life and professional endeavors, and an impairment of the capacity to perform activities common to a woman of her age and sex; and she sustained an aggravation of pre-existing mental and physical conditions to the point where she was rendered totally and permanently

disabled to work. Plaintiff is entitled to receive a just and fair compensation for these damages.

7.4 As a consequence of **DHS'** aforementioned unlawful employment practices and the resultant aggravation of her mental and physical conditions, **ARSUAGA** has been and will continue to be in the future under medical treatment and medications. She has incurred and will continue to incur in the future in expenses for said medical treatment and medications. Plaintiff is entitled to receive a reasonable amount of money for these medical expenses.

7.5 Also as a direct result of the **DHS'** unlawful employment practices and **ARSUAGA's** resultant permanent inability to work, she has sustained and will sustain a loss of earnings and employment benefits. Defendant is liable to Plaintiff for the loss of past and future pay and benefits caused by its violation of the Rehabilitation Act.

7.6 Pursuant to the Rehabilitation Act, Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C.S. § 1920, Plaintiff is entitled to be awarded the costs to be incurred in this suit, plus reasonable attorneys' fees.

**THEREFORE, ARSUAGA** demands that Judgment be entered in her favor and against the **DHS,** granting her: back pay and future pay; the amount of **THREE HUNDRED THOUSAND DOLLARS ($300,000.00)** in compensatory damages; an award for medical and other analogous expenses, reasonably estimated at this time in the amount of **FIFTY THOUSAND DOLLARS ($50,000.00)**; a reasonable amount for attorneys' fees, the costs of this action,

and post-judgment interests; and, such other further relief that under the circumstances may seem appropriate to this Honorable Court.

**Second Cause of Action:**

7.7 Plaintiff repeats and reasserts by reference each and every allegation contained the preceding paragraphs and incorporates the same herein as though fully set forth.

7.8 **DHS** unlawfully discriminated against **ARSUAGA** with respect to her terms, conditions and privileges of employment by reason of her disabilities, because it interfered with and failed to provide the feasible and reasonable accommodations requested by her, in violation of the Rehabilitation Act.

7.9 As a direct result of the aforementioned unlawful employment practices, **ARSUAGA** suffered, is suffering and will continue to suffer severe mental, psychological, moral and emotional pain, anguish and distress; she has sustained a loss of happiness, a loss of the capacity to enjoy life and professional endeavors, and an impairment of the capacity to perform activities common to a woman of her age and sex; and she sustained an aggravation of pre-existing mental and physical conditions to the point where she was rendered totally and permanently disabled to work. Plaintiff is entitled to receive a just and fair compensation for these damages.

7.10 As a consequence of **DHS'** aforementioned unlawful employment practices and the resultant aggravation of her mental and physical conditions, **ARSUAGA** has been and will continue to be in the future under medical treatment

and medications. She has incurred and will continue to incur in the future in expenses for said medical treatment and medications. Plaintiff is entitled to receive a reasonable amount of money for these medical expenses.

7.11 Pursuant to the Rehabilitation Act, Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C.S. § 1920, Plaintiff is entitled to be awarded the costs to be incurred in this suit, plus reasonable attorneys' fees.

**THEREFORE, ARSUAGA** demands that Judgment be entered in her favor and against the **DHS,** granting her: the amount of **THREE HUNDRED THOUSAND DOLLARS ($300,000.00)** in compensatory damages; an award for medical and other analogous expenses, reasonably estimated at this time in the amount of **FIFTY THOUSAND DOLLARS ($50,000.00)**; a reasonable amount for attorneys' fees, the costs of this action, and post-judgment interests; and, such other further relief that under the circumstances may seem appropriate to this Honorable Court.

**Third Cause of Action:**

7.12 Plaintiff repeats and reasserts by reference each and every allegation contained the preceding paragraphs and incorporates the same herein as though fully set forth.

7.13 **DHS** took retaliatory actions against **ARSUAGA** with respect to her terms, conditions and privileges of employment and constructively discharged her from her job because she engaged in protected activities, in violation of Title VII.

7.14 As a direct result of the aforementioned unlawful employment practices, **ARSUAGA** suffered, is suffering and will continue to suffer severe mental, psychological, moral and emotional pain, anguish and distress; she has sustained a loss of happiness, a loss of the capacity to enjoy life and professional endeavors, and an impairment of the capacity to perform activities common to a woman of her age and sex; and she sustained an aggravation of pre-existing mental and physical conditions to the point where she was rendered totally and permanently disabled to work. Plaintiff is entitled to receive a just and fair compensation for these damages.

7.15 As a consequence of **DHS'** aforementioned unlawful employment practices and the resultant aggravation of her mental and physical conditions, **ARSUAGA** has been and will continue to be in the future under medical treatment and medications. She has incurred and will continue to incur in the future in expenses for said medical treatment and medications. Plaintiff is entitled to receive a reasonable amount of money for these medical expenses.

7.16 Also as a direct result of the **DHS'** unlawful employment practices and **ARSUAGA's** resultant permanent inability to work, she has sustained and will sustain a loss of earnings and employment benefits. Defendant is liable to Plaintiff for the loss of past and future pay and benefits caused by its violation of the Rehabilitation Act.

7.17 Pursuant to the Rehabilitation Act, Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C.S. § 1920, Plaintiff is entitled to be awarded the costs to be incurred in this suit, plus reasonable attorneys' fees.

**THEREFORE, ARSUAGA** demands that Judgment be entered in her favor and against the **DHS,** granting her: back pay and future pay; the amount of **THREE HUNDRED THOUSAND DOLLARS ($300,000.00)** in compensatory damages; an award for medical and other analogous expenses, reasonably estimated at this time in the amount of **FIFTY THOUSAND DOLLARS ($50,000.00)**; a reasonable amount for attorneys' fees, the costs of this action, and post-judgment interests; and, such other further relief that under the circumstances may seem appropriate to this Honorable Court.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** it is respectfully requested that Judgment be entered by this Honorable Court in favor of Plaintiff and against Defendant:

a. granting Plaintiff all the sums and remedies requested in the complaint;

b. imposing upon Defendant the payment of all costs and expenses to be incurred in this lawsuit;

c. awarding Plaintiff pre-judgment and post-judgment interests, plus a reasonable amount for attorneys' fees; and,

d. granting Plaintiff any other relief that she may be entitled to as a matter of law.

**RESPECTFULLY SUBMITTED.** In San Juan, Puerto Rico, this 31st day of

December, 2018.

*S/José F. Quetglas Jordán*
USDC-PR #203411

**QUETGLAS LAW FIRM, P.S.C.**
1353, Luis Vigoreaux Ave.
PMB 657
Guaynabo, PR 00966
Tel:(787) 406-8915
Email: jfquetglas@gmail.com;
      quetglaslawpsc@gmail.com
