IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ROSA MARGARITA ARSUAGA-GARRIDO**,
    Plaintiff,

    v.

**KIRSTJEN NIELSEN,**
    Defendant.

CIV. NO. 18-2031 (MDM)

**OPINION AND ORDER**

    Plaintiff Rosa Margarita Arsuaga Garrido ("Arsuaga" or "plaintiff") brings this action against her former employer, the Federal Emergency Management Administration (FEMA) attached to the United States Department of Homeland Security ("DHS" or "defendant"), pursuant to The Rehabilitation Act of 1973, 29 U.S.C.A. § 701 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*. Arsuaga claims that she was subjected to discriminatory treatment when she was not provided a feasible reasonable accommodation for her disabilities, was subjected to disability based harassment, and was the victim of retaliation for having engaged in protected activity which eventually culminated in her termination. (Docket No. 1). Defendant moves to dismiss all, but one, of Arsuaga's claims on the grounds that she failed to exhaust administrative remedies. More specifically, defendant requests the dismissal of Arsuaga's discrimination, retaliation, failure to accommodate, and hostile work environment claims, but not her termination claim, arguing that plaintiff only raised a complaint of discrimination at the administrative level with respect to her *termination*, nothing more. (Docket Nos. 12 & 14). As such, defendant contends that plaintiff can only sue for her termination but cannot assert additional claims in federal court. Arsuaga filed her opposition to the motion to dismiss (Docket No. 17) and defendant subsequently filed a reply thereto. (Docket No. 20).

For the reasons espoused more thoroughly below, the Court **GRANTS in part** and **DENIES in part** defendant's Motion to Dismiss at Docket No. 14.

### I.     Standard for Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

A challenge under Fed. R. Civ. P. 12(b)(6) requires the Court to view the allegations in the complaint liberally in the light most favorable to plaintiff. *Foley v. Wells Fargo*, 772 F.3d 63, 68 (1st Cir. 2014). A complaint, however, must include sufficient facts to make it plausible, which means that it "must contain more than a rote recital of the elements of a cause of action." *See Rodríguez Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). A plaintiff must present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662 (2009). As such, a complaint survives a Rule 12(b)(6) motion to dismiss where it alleges "enough facts to state a claim of relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" . . . "even if seemingly incredible." *Sepulveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir. 2010). "In order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *See Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555) (citation omitted). The First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepulveda–Villarini,* 628 F.3d at 29. *See also Soto–Torres v. Fraticelli,* 654 F.3d 153, 159 (1st Cir. 2011).

In specific instances, certain materials outside the complaint itself may be considered on a motion to dismiss for failure to state a claim. "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claims; or for documents sufficiently referred to in the complaint.'" *Id*. (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). *See, e.g., Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013)

(explaining that "some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment"); *Banco Santander de P.R. v. López-Stubbe (In re Colonial Mortg. Bankers Corp.*), 324 F.3d 12, 20 (1st Cir. 2003) (explaining that district court adjudicating a motion to dismiss may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice"); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (explaining that when a "complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

In the present case, neither party has asked the Court to convert the defendant's motion to dismiss into a motion for summary judgment, and it is undisputed that the motion is governed by the standard set forth in Rule 12(b)(6). Moreover, neither party has disputed the authenticity of the documents attached to defendant's motion, nor the fact that they are public records of administrative proceedings. Moreover, no objection was raised with respect to the Court's consideration of the materials submitted. As such, the documents outside of the complaint submitted by the defendant but referred to by both parties in support of their arguments, will be considered for purposes of defendant's motion to dismiss for failure to state a claim. Having addressed that, the Court now turns to a discussion of the motion before it.

## II. Discussion

In the above-captioned complaint, Arsuaga claims that she filed timely charges of employment discrimination with the Equal Rights Office of the DHS ("ERO") on February 14, 2018. In response, on June 22, 2018, the ERO sent a letter to plaintiff accepting her complaint of discrimination and issued a summary of complaint. The plaintiff did not answer that letter, nor did she request a hearing before the Equal Employment Opportunity Commission ("EEOC"). Subsequently, plaintiff received the right-to-sue notice, dated November 23, 2018, from the ERO. As such, on December 31, 2018, plaintiff filed the present action after 180 days from the date of filing her discrimination complaint with ERO. In the complaint, plaintiff asserts the following claims:

> First cause of action: The DHS discriminated against ARSUAGA with respect to her terms, conditions and privileges of employment and constructively discharged her from her job by reason of her disabilities, in violation of the Rehabilitation Act.
>
> Second cause of action: DHS unlawfully discriminated against ARSUAGA with respect to her terms, conditions and privileges of employment by reason of her disabilities, because it interfered with and failed to provide the feasible and reasonable accommodations requested by her, in violation of the Rehabilitation Act.
>
> Third cause of action: DHS took retaliatory actions against ARSUAGA with respect to her terms, conditions and privileges of employment and constructively discharged her from her job because she engaged in protected activities, in violation of Title VII.

(Docket No. 1.) Arsuaga also broadly claims that she was subjected to a hostile work environment since she began working for the defendant. More specifically, in the complaint she states that "[s]ince Arsuaga's arrival at Anniston, Alabama, for FEMA training, on July 11, 2016, and up to January 18, 2018, she was subjected to continuous hostile-work-environment harassment perpetrated by FEMA's managerial and supervisory employees, co-workers and security guards by reason of the reasonable accommodation for her disability." *Id*.

The defendant moves to dismiss plaintiff's broad claims of discrimination, retaliation, failure to provide reasonable accommodation, and hostile work environment for failure to state a claim because she allegedly failed to exhaust her administrative remedies. Defendant however recognizes that plaintiff did exhaust administrative remedies with respect to her termination claim and, therefore, does not request the dismissal of such claim. The Court begins with Arsuaga's Title VII claims.

### A.  Retaliation under Title VII

In the complaint, Arsuaga asserts a claim of retaliation and/or retaliatory termination under Title VII based on her disability "because she engaged in protected activities, in violation of Title VII." (Docket No. 1). More specifically, she claims that her employment was terminated in retaliation "for having engaged in protected activities—namely, requesting [a] reasonable accommodation [for her disabilities] and complaining of disability-based harassment." (Docket Nos. 1 and 17). Defendant moves to dismiss this claim for alleged failure to exhaust administrative remedies. The Court, however, need not join the discussion of this highly contested argument because it can quickly dispose of plaintiff's Title VII claim on other grounds.

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race, color, religion, sex or national origin.*" 42 U.S.C. § 2000e–2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee because the employee has taken an action to enforce her rights under Title VII. 42 U.S.C. § 2000e. As to retaliation particularly, Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42.U.S.C. § 2000e–3(a). To prove a retaliation claim under this statute, a plaintiff must show that: (1) she engaged in *protected conduct under Title VII*, (2) she suffered an adverse employment action, and (3) the adverse action was casually connected to the protected activity. *Ponte v. Steelcase Inc.,* 741 F.3d 310, 321 (1st Cir. 2014); *Collazo v. Bristol–Myers Squibb Mfg., Inc.,* 617 F.3d 39, 46 (1st Cir. 2010). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed *any practice made an unlawful employment practice' by Title VII* or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' *under Title VII.*" *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009) (citing *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e–3(a))). "The term 'protected activity' refers to action taken to protest or oppose *statutorily prohibited discrimination.*" *Fantini*, 557 F.3d at 32 citing *Cruz v. Coach Stores Inc.,* 202 F.3d 560, 566 (2nd Cir. 2000) (citing 42 U.S.C. § 2000e–3); *see also Sumner v. U.S. Postal Service,* 899 F.2d 203, 209 (2d Cir. 1990).

As a threshold matter, a plain reading of the statute makes pellucid that Title VII bars only discrimination on the basis of *race, color, religion, sex, and national origin*, but does *not* provide a cause of action for claims of *disability*-based discrimination or retaliation. Title VII therefore does not encompass disability discrimination claims, like the ones asserted in the present case. In her complaint, Arsuaga specifically alleges that she was discriminated, retaliated against, and terminated *solely* because of her *disabilities*. Because Arsuaga's claims are exclusively grounded on disability discrimination and retaliation, her claims are not cognizable under Title VII and consequently cannot survive dismissal. *See Fantini*, 557 F.3d at 32 (affirming the district court's dismissal of Appellant's Title VII retaliation claim because the alleged "misconduct" that she "complained about" was not an unlawful employment practice under Title VII); *see also Torres-Alman v. Verizon Wireless Puerto Rico, Inc.,* 522 F. Supp. 2d 367, 381 (D.P.R. 2007) (disability discrimination claims cannot be brought pursuant to Title VII); *Villegas–Reyes v. Universidad Interamericana de P.R.*, 476 F. Supp. 2d 84, 92 (D.P.R. 2007) (*sua sponte* dismissal with prejudice for failure to state a Title VII claim is warranted

where plaintiff only alleged discrimination based on age and disability); *Marrero v. Schindler Elevator Corp.*, 494 F. Supp. 2d 102, 111 (D.P.R. 2007). (same).

Accordingly, Arsuaga's claims under Title VII are **DISMISSED with prejudice**.[1]

### B.     The Rehabilitation Act of 1973

Defendant has also requested the dismissal of Arsuaga's other claims brought pursuant to The Rehabilitation Act of 1973, namely, her broader claims of discrimination, failure to reasonably accommodate, and hostile work environment. In support of dismissal, defendant claims that Arsuaga did not exhaust the requisite administrative remedies and, therefore, she is barred from asserting these claims in federal court. More specifically, defendant maintains that the claims Arsuaga raised in the present case, except for the claim with respect to her termination, were *not* brought to the attention of an EEO counselor at the administrative level and, therefore, their dismissal is warranted on exhaustion grounds. In her opposition to dismissal, Arsuaga challenges defendant's arguments, claiming that she did exhaust the necessary administrative requirements concerning her hostile work environment claim, specifically. (Docket No. 17). There was no mention of an additional claim in Arsuaga's opposition, but the Court will assume that plaintiff is also challenging the dismissal of her failure to accommodate claim, which appears to have been alleged in the complaint.

Before considering defendant's arguments on their merits, however, the Court pauses to review the applicable regulations concerning a federal employee's claims under The Rehabilitation Act, which neither party properly addressed. The Rehabilitation Act forbids discrimination on the basis of disability against otherwise qualified individuals working for an executive agency or a program receiving federal funds. *See* 29 U.S.C. §§ 791, 794. To enforce this prohibition, the Rehabilitation Act provides for administrative and judicial recourse for federal employees who filed a complaint of disability-based employment discrimination and were aggrieved by either the final disposition of their

---

[1]     Disability discrimination in federal employment is specifically covered by the provisions of The Rehabilitation Act of 1973, 29 U.S.C. § 794, under which Arsuaga asserted her other causes of actions in the complaint. *See Rojas v. Principi*, 326 F. Supp. 2d 267, 276 (D.P.R. 2004).

complaint or the failure to take final action. *Id.* § 794a(a). *Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 47 (1st Cir. 2014).

Rather than establish its own procedures for claims of discrimination brought under Section 791, the Rehabilitation Act expressly incorporates the procedures set forth in Sections 717 and 706(f)-(k) of Title VII, 42 U.S.C. § 2000e *et seq. Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 47 (1st Cir. 2014). And while Section 717 of Title VII does not itself establish applicable procedures or time limits for filing an administrative complaint, it does authorize the EEOC to issue rules and regulations to that end. *See* 42 U.S.C. § 2000e–16(b). EEOC regulations establish that this process requires the complainant to, among other things, file a complaint with the relevant agency. 29 C.F.R. § 1614.106(a). The complaint must contain a statement "describ[ing] generally the action(s) or practice(s) that form the basis of the complaint." *Id.* § 1614.106(c). EEOC regulations further provide that "the agency shall dismiss an entire complaint" if it "fails to comply with applicable time limits," including the fifteen-day window established by § 1614.106. 29 C.F.R. § 1614.107.[2]

Moving from the administrative realm to the judicial, Section 717(c) of Title VII authorizes an aggrieved employee to file a civil action against the head of the department or agency that discriminated against him within ninety days of receipt of notice of final action on her complaint. *Vazquez-Rivera*, 759 F.3d at 47–48; 42 U.S.C. § 2000e–16(c). As such, a federal employee complaining of discrimination may sue in federal court but must first "seek relief in the agency that has allegedly discriminated against [her]." *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 832 (1976); *see also Vera v. McHugh,* 622 F.3d 17, 29 (1st Cir. 2010); 42 U.S.C. § 2000e–16(c). As a prerequisite, therefore, "a federal employee

---

[2] The Court notes that the defendant makes reference to the forty-five (45) day timeframe for when an aggrieved person must initiate contact with an EEO Counselor, counting from the date of the matter alleged to be discriminatory. Nevertheless, there was a serious lack of developed argumentation in defendant's motion regarding a timeliness issue. From the bulk of the arguments raised, the Court understands that the defendant's chief claim is a challenge to the *contents* of Arsuaga's administrative complaint. To be sure, defendant focuses its discussion on *what* plaintiff complained of at the EEO level (or, to be more precise, what she did *not* complain of) rather than *when* she issued her complaints. While the Court will not go as far as deeming as waived any argument in favor of dismissal for failure to exhaust administrative remedies on timeliness grounds, it will not put the flesh on the bones of defendant's skeletal argument at this juncture, if any was raised at all.

must first have exhausted the administrative remedies provided." *Roman–Martinez v. Runyon,* 100 F.3d 213, 216 (1st Cir. 1996) (citing *Brown v. General Servs. Admin.,* 425 U.S. 820, 832, 1976). Having exhausted that administrative remedy, the complainant may, within a certain time period, either appeal to the EEOC and then file a complaint with a federal district court or immediately file in court. 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.407. This exhaustion requirement is no small matter; it "is a condition to the waiver of sovereign immunity" and thus "must be strictly construed." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 94 (1990). Exhaustion in the Title VII context "has two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005).[3]

Against that legal backdrop, the Court now considers the pertinent arguments. On one hand, defendant maintains that plaintiff's claims of discriminatory treatment when she was not provided a feasible reasonable accommodation for her disabilities and disability-based harassment are both barred and should be dismissed because they were not raised at any time during the administrative process. More specifically, defendant maintains that the administrative record plainly suggests that the *only* claim Arsuaga raised at the administrative level, and submitted for investigation with the ERO, was a

---

[3] In the interest of completeness, the Court notes that the Rehabilitation Act provides that claims brought under Section 794—unlike those brought under Section 791—are governed by the procedural requirements of Title VII. 29 U.S.C. § 794a(a)(2). In theory, then, an individual who brings a claim under Section 794 rather than Section 791 *could* avoid Title VII's administrative exhaustion requirement. Although the First Circuit has declined to decide the subject directly, it has noted that sister circuits have uniformly held that a federal employee wishing to bring suit under Section 791 of the Rehabilitation Act must first exhaust administrative remedies. *Vazquez-Rivera v. Figueroa,* 759 F.3d 44, 48 (1st Cir. 2014); *see Bartlett v. Dep't of the Treasury (I.R.S.),* 749 F.3d 1, 8 (1st Cir. 2014) (observing that "in at least one case, we have suggested the same," but declining to decide whether a federal employee suing under Section 794 must exhaust administrative remedies). The First Circuit has therefore found it prudent to avoid resolving the matter in cases where it was not required, as when a plaintiff bringing suit under Section 794 "never asserted that she was exempt from the exhaustion requirement." *See Vazquez-Rivera, supra, citing Bartlett,* 749 F.3d at 9 ("At the very least, by failing to raise the issue in the district court, she has forfeited any argument that exhaustion of remedies under the Rehabilitation Act was not required in this case.").

In the present action, it is unclear whether plaintiff alleged a violation of Section 791 or 794 of the Rehabilitation Act because the plaintiff omitted such detail. What is clear however is that plaintiff neither argued nor alleged that she did *not* have to exhaust administrative remedies. As such, prudence counsels against the resolution of the exhaustion question at this juncture. *Vazquez-Rivera, supra.* The Court thus proceeds—in keeping with plaintiff's own assertions—under the assumption that Title VII's procedures apply, and that administrative exhaustion was required.

claim regarding her termination, which happened on January 18, 2018. Defendant further argues that Arsuaga did *not* raise any other claim nor did she complain of any additional discriminatory conduct with an EEO Counselor.

On the other hand, plaintiff asserts that beginning in July 2016, when she began working for the defendant, she was subjected to continuous hostile work environment harassment by management, supervisory employees, co-workers and security guards: (a) by reason of the reasonable accommodation she requested for her disability; and, (b) for having engaged in protected activities—namely, requesting such reasonable accommodation and complaining of disability-based harassment. (Docket Nos. 1, 17). Plaintiff maintains that such claims should *not* be dismissed for failure to exhaust administrative remedies because the administrative record of this case clearly suggests that she did raise a discrimination complaint because her supervisors and others allegedly subjected her to broader discriminatory and retaliatory treatment and continuous workplace harassment because of her disability and her requests for reasonable accommodation.

To resolve this factual issue, the Court thoroughly reviewed Arsuaga's complaint and the documents submitted by the defendant in support of its motion to dismiss. The Court begins at the heart of defendant's argument, the June 22, 2018 letter sent by the ERO to plaintiff where the ERO accepted her complaint of discrimination and summarized it as follows:

> Your claim has been summarized to frame the basic issue in your complaint. You will be given the opportunity to elaborate on your claim, and to identify individuals by name during the investigation. The following claim of discrimination has been accepted for investigation:
>
> Whether Complainant was subjected to *on-going harassment, discriminated against because a disability (physical/mental), and reprisal* (contact made in March 2017, did not request counseling; RA approved) when: on January 18, 2018, Complainant received a Notice of Termination of Appointment.

The defendant points to the above cited letter to support its contention that plaintiff's administrative complaint was *exclusively* limited to her termination of employment and not a single claim more. As such, the defendant argues that plaintiff's case in federal court should also be limited to her termination. Defendant zealously maintains that according to the ERO's letter, it was allegedly interpreted that plaintiff's *only* complaint was whether she was discriminated and subjected to retaliation when she was *terminated* on January 18, 2018. Defendant also points to over three hundred pages in connection with Arsuaga's administrative record. In its discussion, defendant tries to make much of the fact that plaintiff did not submit written clarifications to the manner in which ERO "framed" her complaint in the June 22, 2018 letter. Defendant's position is that the ERO "framed" her complaint as one limited to her termination. Of course, that is one convenient interpretation; the plaintiff does not see it that way. In any event, it is the defendant's contention that if the plaintiff intended for her ERO complaint to include all the allegations she filed in this action, she was required to respond to ERO's June 22, 2018 letter or contact an EEO counselor sometime after June 22, 2018, to assure her complaint included claims *other* than her termination.

In contrast, Arsuaga maintains that defendant's contentions are without merit because the administrative record illustrates that she did complain of broader discriminatory and retaliatory conduct by her former employer, including workplace harassment, and not just her allegedly unlawful termination. Arsuaga points to a summary of the transcript of her EEO Charge, which according to her, clearly states that she complained that defendant subjected her to continuing hostile work environment harassment from 2016 until January 11, 2018 and that she was discriminated and retaliated against because of her disabilities and for requesting a reasonable accommodation. (Docket No. 14-1 at 17-24). Thus, the plaintiff maintains that she did exhaust the required administrative remedies and the claims she lodged in the complaint under the Rehabilitation Act may proceed.

After carefully reviewing the materials submitted with the motion to dismiss, including the transcript of Arsuaga's EEO Charge and accompanying documentation, the

Court simply cannot conclude that plaintiff's complaints of discrimination with the ERO were *solely* limited to her termination. The parties raised factual issues that prevent the Court from resolving this matter at this juncture. More specifically, the facts alleged with respect to defendant's affirmative defense—that plaintiff's hostile work environment claims and failure to provide feasible reasonable accommodation are barred for failure to exhaust administrative remedies—are not clear on the face of the pleadings or additional documents considered. Viewed in the light most favorably to plaintiff, nothing in the complaint or exhibits attached to the motion to dismiss shows that plaintiff *only* complained of her termination but failed to complain to the ERO about broader discriminatory and harassing conduct by her former employer. To the contrary, as will be illustrated below, the pleadings and supplemental material tend to show that plaintiff's complaints of discrimination with the ERO included a charge of employment termination for sure but also encompassed broader discrimination complaints related to her disabilities. As such, the facts as set forth in the complaint and additional materials, and taken as true for the purpose of the motion to dismiss, connote that plaintiff complained of various illegal employment actions taken against her, and that her administrative complaint was *not* limited solely to her termination of employment.

At this stage, the Court disagrees with defendant's oversimplified, restrictive, and self-serving description of Arsuaga's administrate complaint. In support of this determination, the Court points to the "Description of complaint" section of Arsuaga's ERO complaint, wherein it states:

> The Complainant states that she believes that Louis Perez intentionally and in complicity with human resources FEMA personnel and others at the various deployed locations, *subjected her to a hostile work environment because of her disabilities*. She states that *Mr. Perez failed to provide or interfered with her feasible reasonable accommodations*. She states that Mr. Perez *acted in a retaliatory manner against her* by constantly taking *negative actions* and, *ultimately, terminating her from employment* on January 18, 2018 in San Juan, Puerto Rico.

*See* (Docket No. 14-1 at 11). It further indicates that:

> [The] [c]omplainant states that she requested a reasonable accommodation for her disability on July 26, 2016. She states that her reasonable accommodation request was to have an emotional support animal in a crate underneath her working desk. She states that she made the request directly to Mr. Perez who was the decision-maker of her request. She states that the Mr. Perez granted the accommodation on an interim basis with conditions. She states that she could not perform her duties without a reasonable accommodation. (*Id.* at 11) Complainant states that on January 18, 2018, she learned that she was terminated while she was on sick leave. She states she received an email from Mr. Perez stating that she was terminated. She states that reasons Mr. Perez gave for terminating her were false and were a pretext to cover up disability-based discrimination and retaliatory acts. (*Id.*)
>
> She states that she lost her income and was terminated after *two years of being subjected to harassment and reprisals* from FEMA and Mr. Perez. Complainant states that immediately after *she complained about the ongoing harassment by Mr. Perez*, she was subjected to retaliatory acts from Louis Perez and personnel at each of the sites she was deployed. She states that she was *punished and demobilized at each of the deployments* and asked to return to Puerto Rico after being *subjected to mental/emotional abuse, confrontations and humiliations*. She states that when she was in Puerto Rico the *harassment continued* and, simultaneously, *because of her reasonable accommodation*, Mr. Perez fired her. (*Id.* at 12).
>
> Complainant states that her disability was a factor in being terminated from her position. She states that since day one of being employed at FEMA, it was known that she had a disability and, therefore, had a reasonable accommodation. She states that she was *subjected to offensive, hostile and discriminatory acts and comments* at Anniston, Alabama, Mt. Weather, Virginia, Sevierville, Tennessee, Oklahoma City, Oklahoma, Atlanta, Georgia, Maitland and Orlando, Florida, San Juan, Puerto Rico. (Tab F-1) Complainant states the *harassment* towards her was severe and pervasive and created a *hostile work environment* for her that unreasonably interfered with her work performance. She states that FEMA

and Louis Perez *punished her with termination* of employment for engaging in a legally protected activity.

*Id*. Furthermore, Arsuaga stated in her administrative complaint filed on February 10, 2018, that the reason she was complaining of discrimination was:

> "*harassment, intentional discriminatory emotional abuse* and *discrimination because of physical/mental disability*, retaliation/reprisal, *wrongful termination* of employment in retaliation/reprisal because of physical/mental disability discrimination, *failure to provide reasonable accommodation* and *prohibition of emotional support dog* on working premises."

(Docket 14-1 at 17). Moreover, in the formal complaint, Arsuaga described the actions taken against her as follows: "[s]ince 2016 I have been subjected by FEMA employees to discrimination, harassment and retaliation and emotional abuse because of physical/mental disability and the use of an emotional support dog at work." *Id*. at 20. When asked to provide the dates when the discriminatory actions occurred, Arsuaga expressly indicated actions dating to 2016, 2017 and 2018, the last being her termination in January 18, 2018. *Id*. at 20-21.

Based on the foregoing record, and after a careful consideration of the administrative ERO complaint and its accompanying documentation, the Court finds that defendant's arguments in favor of dismissal are full of red herrings. Far from supporting the dismissal of Arsuaga's claims for failure to reasonably accommodate and hostile work environment, the documents submitted by the defendant do quite the opposite. Overall, viewed in the light most favorable to plaintiff, the record shows that plaintiff's administrative complaints of discrimination were far more extensive and much broader than a formal complaint for alleged retaliatory and discriminatory termination of employment. The materials submitted to the Court therefore tend to show that defendant's main argument—that plaintiff did *not* complain of anything but-for her termination to the ERO—does not hold water.

Indeed, the fact that a complainant, such as Arsuaga, has filed an EEO complaint does not open the courthouse door to all claims of discrimination. *See Velazquez-Ortiz v. Vilsack,* 657 F.3d 64, 71 (1st Cir. 2011). Rather, the scope of the federal court complaint is constrained by the allegations made in the administrative complaint: the former must "bear some close relation" to the latter. *Jorge v. Rumsfeld,* 404 F.3d 556, 565 (1st Cir. 2005). In other words, "[t]he scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Powers v. Grinnell Corp.,* 915 F.2d 34, 38 (1st Cir. 1990). Notwithstanding that, however, the language used in the complaint *need not* "presage with literary exactitude the judicial pleadings which may follow." *Thornton v. United Parcel Serv., Inc.,* 587 F.3d 27, 32 (1st Cir. 2009) (quoting *Davis v. Lucent Techs., Inc.,* 251 F.3d 227, 233 (1st Cir. 2001)). Here, viewing the documents submitted in support of defendant's motion to dismiss in the light most favorably to plaintiff, as the Court must, the Court finds that the administrative record submitted indeed shows that the scope of plaintiff's EEO complaint was *not* limited solely to her termination of employment, but rather included claims of discriminatory treatment related to her reasonable accommodation (an emotionally support animal,) and disability-based harassment.

Furthermore, contrary to defendant's contention, plaintiff was not required to submit a written clarification or a response to the ERO's letter. With its argument, defendant intends to impose an otherwise unrequired burden on the plaintiff. The regulations clearly provide that a plaintiff may issue a response to the EEOC and appeal to the EEOC or immediately file in federal court after receiving a right-to-sue notice. Moreover, the Court's reading of the documents submitted in connection with Arsuaga's administrative complaint differs greatly from the defendant's extremely restrictive interpretation of how the ERO allegedly summarized her complaint. It begs the question, therefore, that perhaps plaintiff's interpretation of the manner in which the ERO "framed" her complaint was more akin to that of the Court's, where her complaint did include broader claims of discriminatory employment practices and not just a complaint in connection with her allegedly unlawful termination. In any event, at this stage, the

plaintiff is entitled to have her factual allegations, including her interpretation and characterization of her *own* complaints, accepted as true. The defendant is of course free to challenge the plaintiff's allegations using the underlying evidence, and any other evidence obtained during discovery, at a later stage in the proceedings.

Further boasting the Court's conclusion is the fact that plaintiff claims that she formally complained at the administrative level on at least four occasions: December 28, 2016, February 27, 2017, July 5, 2017, and October 13, 2017. The defendant does not appear to challenge the fact that plaintiff indeed complained on those dates, however, defendant claims that there is no *evidence* to support that plaintiff contacted the ERO to report a discriminatory event on those dates aside from her "bare assertions." More specifically, defendant claims that there is no *proof* (thru an email, mailing, fax or any other method of correspondence) that the "Incident Reports" (which summarize the complaints) from those dates were in fact submitted to the ERO. As such, defendant maintains that plaintiff has failed to *proffer evidence* that she exhausted administrative remedies.[4] The defendant's argument must fail for being inconsistent with plaintiff's burden of proof at this juncture and the standard of review for a motion to dismiss under Rule 12(b)(6).

At the 12(b)(6) stage, contrary to defendant's contention, plaintiff does not have the burden to prove her case through evidence. Rather, at this point, the Court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in plaintiff's favor. The Court understands that in this case the parties have raised factual disputes related to plaintiff's complaints to the ERO. Thus, the Court cannot properly resolve plaintiff's hostile work environment claim nor her failure to provide reasonable accommodation claim at the motion to dismiss stage. For dismissal to be warranted on the basis of an affirmative defense, the facts necessary to prove it must be clear "on the face of the plaintiff's pleadings." *MIT Fed. Credit Union v. Cordisco*, 470 F. Supp. 3d 81, 84–85 (D. Mass. 2020) (citing *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)

---

[4]      The defendant does not seem to challenge plaintiff's complaint with the ERO dated October 13, 2017.

(quoting *Aldahonda-Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir. 1989))). A review of the complaint, together with other documents appropriately considered under Fed. R. Civ. P. 12(b)(6), must "leave no doubt" that the plaintiff's action is barred by the asserted defense. *Id.* (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998)). That is not the case here. Accordingly, the defendant's motion to dismiss with respect to plaintiff's claims under the Rehabilitation Act is hereby **DENIED**.

### III.   Conclusion

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** defendant's Motion to Dismiss at Docket Nos. 12 and 14. More specifically, the Court **DISMISSES with prejudice** plaintiff's claims under Title VII, but nevertheless, allows to survive the following three claims under the Rehabilitation Act: (1) the discriminatory and/or retaliatory termination claim; (2) the failure to reasonably accommodate claim; and (3) the hostile work environment claim.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of February 2021.

_____
MARSHAL D. MORGAN
United States Magistrate Judge